IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA Y.S. WEST, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:12-CV-661-RWS |
| TERRY DAVIS, | : |
| | : |
| Defendant. | : |

**ORDER**

This case comes before the Court on Defendant Terry Davis's Motion for Summary Judgment [28]. After reviewing the record, the Court enters the following Order.

**Background**

This case arises out of a confrontation between a Fulton County Sheriff's Deputy and an attorney in the security line at the Fulton County Courthouse. On December 9, 2010, Plaintiff Lisa Y.S. West arrived at the courthouse to serve as counsel in a domestic relations status conference. (Def.'s Statement of Material Facts ("Def.'s SMF"), Dkt. [28-1] ¶¶ 1, 12.) Defendant Fulton County Sheriff's Deputy Terry Davis was on duty at the time. (Id. ¶ 10.)

As she arrived at the security line to enter the courthouse, Plaintiff put her personal belongings in a bin and then proceeded through the metal detector. (Id. ¶ 14.) When the alarm sounded, Defendant approached her and told her to remove her jacket. (Id. ¶¶ 15-16.) Plaintiff refused, stating that the jacket was part of her suit and that removing it would expose her undergarments. (Id. ¶ 18.) The Fulton County Sheriff's Office's unwritten policy is that "members of the public need not remove suit jackets before walking through the metal detector," and Sheriff Deputies must use their discretion to decide which pieces of clothing are suit jackets and which are coats. (Id. ¶¶ 6-7.) Plaintiff claims that Defendant told her that she would not be permitted into the courthouse if she did not remove her jacket. (Id. ¶ 19.) If she failed to comply but remained in the courthouse, she was told she would be arrested. (Pl.'s Resp. to Def.'s Statement of Material Facts, Dkt. [33] ¶ 19.) Plaintiff further claims she felt uncomfortable because Defendant was standing too close to her, and he lowered his eyes and looked at her chest. (Def.'s SMF, Dkt. [28-1] ¶¶ 20-21.)

According to Plaintiff, after her request to speak to a supervisor, "[Defendant] put his hand on his handcuffs, glared at her 'menacingly,' and paced back and forth." (Id. ¶ 23.) Plaintiff walked to the entrance area to wait

2

while Defendant called a supervisor. (Id. ¶ 24-25.) While waiting, she decided to use her cell phone to call her husband and then the client she was supposed to meet in court. (Id. ¶ 27.) Defendant then approached her and told her to get off her phone. (Id. ¶ 28.) Cell phone use is prohibited near the magnetometer and x-ray machines by the courthouse entrances. (Id. ¶ 8.) When she did not comply, Plaintiff asserts that Defendant "grabbed her hand, squeezed it, jerked it towards him, wrenched it back and forth, and then forcibly removed the cell phone and flung it into her purse." (Pl.'s Statement of Material Facts, Dkt. [34] ¶ 13.) Defendant, however, states that he took the phone without grabbing her hand or using force. (Id. ¶ 14.) Once the supervisor arrived, he permitted Plaintiff to enter the courthouse after directing Defendant to use a "wand" metal detector that did not require her to remove the jacket. (Id. ¶¶ 16, 18.)

Plaintiff brought this action alleging Defendant used excessive force in violation of the Fourth Amendment and is liable under state law for battery, negligence, and excessive use of force in violation of the Georgia Constitution. Plaintiff maintains that as a result of Defendant's alleged use of force, she suffered a sprained wrist and then developed carpel tunnel syndrome several weeks later, which ultimately required surgery. (Id. ¶ 18; Depo. of Lisa Y.S.

3

West, Dkt. [28-11] at 98-103.)  Defendant seeks summary judgment on these claims on the basis of qualified and official immunity.

## Discussion

### I.     Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

5

**II.     Plaintiff's Federal Excessive Force Claim**

<u>A.</u>     <u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  <u>Id.</u> at 1358.

Whether an official is entitled to qualified immunity is determined by a two-step inquiry:  One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation."  <u>Barnett v. City of Florence</u>, 409 F. App'x 266, 270 (11th Cir. 2010) (citing <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002)).  "If the facts, construed . . . in the light most favorable to the plaintiff, show that

6

a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' " Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)). The Court first examines the substantive constitutional question.

### B. Applicable Standard

Defendant argues that the Fourth Amendment does not apply here because "[Plaintiff] was not seized within the meaning of the Fourth Amendment." (Def.'s Br., Dkt. [28-2] at 8.) Instead, he states that Plaintiff's claim is more appropriately considered a non-seizure Fourteenth Amendment substantive due process claim of excessive force. (Def.'s Reply, Dkt. [36] at 4.) Plaintiff, on the other hand, asserts that Defendant's actions constituted an excessive use of force in violation of the Fourth Amendment because the Fourth Amendment applies to more than just the use of force incident to a seizure; that is, the use of force itself constitutes a seizure. (Pl.'s Br., Dkt. [32] at 7.)

The Court disagrees. "A 'seizure' triggering the Fourth Amendment's

protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.' " Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). A show of authority is only a seizure if the subject yields to that authority. California v. Hodari D., 499 U.S. 621, 625-26 (1991). Thus, only three types of encounters between police and citizens implicate the Fourth Amendment: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests. . . . [A]n encounter that does not involve coercion or detention does not implicate Fourth Amendment scrutiny." Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006) (quoting United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)) (internal quotation marks omitted). Plaintiff has not shown that she was detained by Defendant's use of force or that her freedom of movement was restricted in any way. See Terry, 392 U.S. at 16 (stating that a seizure occurs when a police officer restrains an individual's freedom to walk away). The record indicates that Plaintiff knew at all times that she was free to walk away. Nor is there evidence that Defendant made a show of authority to which she yielded. Therefore, because Plaintiff was not seized within the meaning of the

8

Fourth Amendment, this claim is properly analyzed under the Fourteenth Amendment's substantive due process standard.

### C.  Excessive Force under the Fourteenth Amendment

A government official's use of force is excessive under the Eighth or Fourteenth Amendments[1] only if it "shocks the conscience." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009). "The use of force does not 'shock the conscience' if it is applied in a good-faith effort to maintain or restore discipline." Id. (internal quotation marks and citation omitted). If, however, the use of force is applied "maliciously and sadistically to cause harm, then it does 'shock the conscience,' and is excessive under the Eighth or Fourteenth Amendments." Id. (internal quotes and citation omitted). "[O]nly the most egregious official conduct will be the sort of abusive executive action that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim." Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted). "[C]onduct intended to injure in

---

[1] Excessive force claims under the Fourteenth Amendment are analyzed in the same manner as Eighth Amendment excessive force claims. Fennell, 559 F.3d at 1216 n.5. Thus, both Eighth and Fourteenth Amendment cases are instructive here.

9

some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

In determining whether force was applied maliciously and sadistically to cause harm, the Eleventh Circuit considers the totality of the circumstances in determining whether the amount of force used is obviously excessive. Neal v. Fulton Cnty. Bd. of Educ., 229 F.3d 1069, 1075 (11th Cir. 2000). In particular, the Court has examined: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. See, e.g., Fennell, 559 F.3d at 1217 (applying these factors in the prison context); Neal, 229 F.3d at 1076-77 (applying these factors in the classroom disciplinary context).

Considering the totality of the circumstances, the Court cannot conclude that Defendant maliciously and sadistically used force for the very purpose of causing harm. Plaintiff argues that any use of force in her circumstances was excessive because she was offering no physical resistance. The Eleventh Circuit, however, has permitted using force even absent physical resistance. See Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding it was not unreasonable for a guard to grab a prisoner by the throat and shove him against

10

the prison bars after failing to follow the guard's instructions and shouting obscenities).  Thus, the fact that Plaintiff was not physically resisting Defendant does not automatically render any force used unconstitutional.  Defendant argues he did not use force at all.  But even assuming he used force, as Plaintiff argues, under Eleventh Circuit precedent his actions were not so egregiously disproportionate as to shock the conscience.  There are no facts indicating that Defendant's purpose in grabbing Plaintiff's cell phone was to injure her.  At most, Defendant was deliberately indifferent in causing injury to Plaintiff's hand.  While such a showing would easily establish liability in an ordinary tort setting, the Eleventh Circuit has held that deliberate indifference—even deliberate indifference resulting in grave injury or death—does not shock the conscience for substantive due process purposes.  See, e.g., Nix, 311 F.3d at 1378-79 (holding that deliberate indifference in a classroom setting resulting in a student's death did not shock the conscience).

Furthermore, the extent of Plaintiff's injury does not demonstrate malice.  The fact that Plaintiff received a sprained wrist that later required surgery is not the sort of injury that could convince this Court that Defendant acted maliciously and sadistically.  In Cockrell v. Sparks, for example, a jail

11

supervisor pushed an inmate who fell over and suffered broken bones. 510 F.3d 1307, 1311-12 (11th Cir. 2007). Because "the severity of the injury could not have been reasonably anticipated," it was less clear that the defendant acted maliciously and sadistically. Id. Even though the prisoner suffered extensive injuries, the Eleventh Circuit found no Eight Amendment violation. Id. Like in Cockrell, here there is no evidence that Defendant's purpose was to cause injury to Plaintiff's wrist. Nor is her injury as severe as those in the cases this Court has cited. In sum, the Court cannot conclude that Defendant's behavior was "among the most egregious official conduct" giving rise to a viable substantive due process claim. See Carr, 338 F.3d at 1271 (quoting Lewis, 523 U.S. at 846). Because Defendant's actions did not shock the conscience, he did not commit a constitutional violation and is thus entitled to qualified immunity.

### III. Plaintiff's State Law Claims

Plaintiff's state law claims include battery, negligence, and excessive force in violation of the Georgia Constitution. Defendant moves for summary judgment with respect to these claims on the basis of official immunity.

### A. Official Immunity

The state constitutional provision governing official immunity provides

12

as follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d). The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994). Accordingly, under this definition, the constitutional provision "provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id. "It however, does provide immunity for the negligent performance of discretionary acts . . . ." Id. In sum, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct.

13

App. 2003).

Whether an act is ministerial or discretionary depends on the nature of the act and not the actor's position. Id. at 380. "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. By contrast, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

As a threshold matter, the Court finds that Defendant's duties at the security line were discretionary because they called for the exercise of personal deliberation and judgment. Thus, Defendant can only be held liable under state law if Plaintiff can show that he acted with actual malice.

For purposes of official immunity, " 'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006). Moreover, "evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to

14

penetrate official immunity." Selvy v. Morrison, 665 S.E.2d 401, 406 (Ga. Ct. App. 2008) (internal quotation marks and citation omitted).  In this case, Plaintiff has not produced sufficient evidence that Defendant acted with the deliberate intention to harm Plaintiff.  While Defendant's grabbing of Plaintiff's cell phone in a manner that caused injury may have been reckless, the record does not support a conclusion that he deliberately intended to cause her bodily harm.  Because Plaintiff cannot show that Defendant acted with actual malice, Defendant is entitled to official immunity with respect to Plaintiff's state law claims.

## Conclusion

In accordance with the foregoing, Defendant's Motion for Summary Judgment [28] is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**SO ORDERED**, this  15th  day of October, 2013.

_____
**RICHARD W. STORY**
United States District Judge

15

AO 72A
(Rev.8/82)