**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LISA Y.S. WEST, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   CIVIL ACTION NO. |
| | :   1:12-CV-00661-RWS |
| DEPUTY TERRY DAVIS, | : |
| | : |
|     Defendant. | : |
| | : |

**ORDER**

This case comes before the Court on remand from the Eleventh Circuit Court of Appeals for consideration of Defendant's Motion for Summary Judgment [28] under the framework of the Fourth Amendment. After considering the record, the Court enters the following Order.

**Background**[1]

This case arises out of a confrontation between a Fulton County Sheriff's Deputy and an attorney in the security line at the Fulton County Courthouse. On December 9, 2010, Plaintiff Lisa Y.S. West arrived at the courthouse to serve as counsel in a domestic relations status conference. (Def.'s Statement of

---

[1]The factual background is taken from the Court's October 15, 2013 Order [38] granting Defendant's Motion for Summary Judgment [28].

Material Facts ("Def.'s SMF"), Dkt. [28-1] ¶¶ 1, 12.)  Defendant Fulton County Sheriff's Deputy Terry Davis was on duty at the time.  (Id. ¶ 10.)

As she arrived at the security line to enter the courthouse, Plaintiff put her personal belongings in a bin and then proceeded through the metal detector. (Id. ¶ 14.)  When the alarm sounded, Defendant approached her and told her to remove her jacket.  (Id. ¶¶ 15-16.)  Plaintiff refused, stating that the jacket was part of her suit and that removing it would expose her undergarments.  (Id. ¶ 18.)  The Fulton County Sheriff's Office's unwritten policy is that "members of the public need not remove suit jackets before walking through the metal detector," and Sheriff Deputies must use their discretion to decide which pieces of clothing are suit jackets and which are coats.  (Id. ¶¶ 6-7.)  Plaintiff claims that Defendant told her that she would not be permitted into the courthouse if she did not remove her jacket.  (Id. ¶ 19.)  If she failed to comply but remained in the courthouse, she was told she would be arrested.  (Pl.'s Resp. to Def.'s Statement of Material Facts, Dkt. [33] ¶ 19.)  Plaintiff further claims she felt uncomfortable because Defendant was standing too close to her, and he lowered his eyes and looked at her chest.  (Def.'s SMF, Dkt. [28-1] ¶¶ 20-21.)

2

According to Plaintiff, after her request to speak to a supervisor, "[Defendant] put his hand on his handcuffs, glared at her 'menacingly,' and paced back and forth." (Id. ¶ 23.) Plaintiff walked to the entrance area to wait while Defendant called a supervisor. (Id. ¶ 24-25.) While waiting, she decided to use her cell phone to call her husband and then the client she was supposed to meet in court. (Id. ¶ 27.) Defendant then approached her and told her to get off her phone. (Id. ¶ 28.) Cell phone use is prohibited near the magnetometer and x-ray machines by the courthouse entrances. (Id. ¶ 8.) When she did not comply, Plaintiff asserts that Defendant "grabbed her hand, squeezed it, jerked it towards him, wrenched it back and forth, and then forcibly removed the cell phone and flung it into her purse." (Pl.'s Statement of Material Facts, Dkt. [34] ¶ 13.) Defendant, however, states that he took the phone without grabbing her hand or using force. (Id. ¶ 14.) Once the supervisor arrived, he permitted Plaintiff to enter the courthouse after directing Defendant to use a "wand" metal detector that did not require her to remove the jacket. (Id. ¶¶ 16, 18.)

Plaintiff brought this action alleging Defendant used excessive force in violation of the Fourth Amendment and is liable under state law for battery, negligence, and excessive use of force in violation of the Georgia Constitution.

3

Plaintiff maintains that as a result of Defendant's alleged use of force, she suffered a sprained wrist and then developed carpel tunnel syndrome several weeks later, which ultimately required surgery.  (Id. ¶ 18; Depo. of Lisa Y.S. West, Dkt. [28-11] at 98-103.)  On October 15, 2013, the Court granted summary judgment in favor of Defendant, holding that Defendant's actions did not amount to a seizure under the Fourth Amendment.  (Dkt. [38].)  The Court therefore analyzed Plaintiff's claim under the Fourteenth Amendment's substantive due process/shock the conscience standard rather than the Fourth Amendment's objective reasonableness standard and found no constitutional violation.  On September 8, 2014, the Eleventh Circuit Court of Appeals reversed and remanded, holding that the proper framework for analyzing Plaintiff's claim was the Fourth Amendment's objective reasonableness standard because Defendant's actions constituted a seizure.  The Court considers Plaintiff's excessive force claim under the Fourth Amendment below.

## Discussion

### I. Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.  Analysis

To show an excessive force claim under the Fourth Amendment, a plaintiff "must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1168 (11th Cir. 2005). Courts rely on several factors "in determining

6

whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.' " Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000)). "Although the facts must be taken in the light most favorable to the plaintiff[], the determination of reasonableness must be made from the perspective of the officer . . . ." Troupe, 419 F.3d at 1168.

Defendant argues that even if his actions amounted to a seizure under the Fourth Amendment, he is still entitled to qualified immunity on Plaintiff's excessive force claim. The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary

7

authority." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Id. at 1358. Plaintiff does not dispute that Defendant was acting within his discretionary authority at the time of the incident; therefore, it is her burden to show that he is not entitled to qualified immunity.

Whether an official is entitled to qualified immunity is determined by a two-step inquiry: One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' " Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)). Thus, even assuming Defendant violated Plaintiff's Fourth Amendment rights by wrenching her phone out of her hand, Defendant

8

is still entitled to qualified immunity if that right was not clearly established at the time of his actions.

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.' " Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). A plaintiff can demonstrate that the contours of a right were clearly established using two methods. First, a plaintiff can point to relevant case law to show a right is clearly established. Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011). While the fact patterns of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar," the salient question is whether the law at the time of the alleged violation gave officials "fair warning" that their acts were unconstitutional. Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting Hope, 536 U.S. at 740).

Second, a plaintiff can show that an officer's conduct violated a right with "obvious clarity"; in other words, the "conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the

9

AO 72A
(Rev.8/82)

conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law.' " Fils, 647 F.3d at 1291 (quoting Vinyard v. Wilson, 311 F.3d 1340, 1355 (11th Cir. 2002)).  The Eleventh Circuit has explained that this method "is a 'narrow exception' to the normal rule that only case law and specific factual scenarios" can "provide an officer with notice of the 'hazy border between excessive and acceptable force.' " Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1198-99 (11th Cir. 2002)).  Thus, an absence of case law does not entitle an officer to qualified immunity "where the officer's conduct is so outrageous that it clearly goes 'so far beyond' these borders." Id. (quoting Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008)).  Qualified immunity therefore "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Plaintiff argues both that previous Eleventh Circuit case law gave Defendant fair warning that his actions would violate the Fourth Amendment and that Defendant's actions lie at the core of what the Fourth Amendment prohibits.  Plaintiff cites several Eleventh Circuit cases in arguing that "[t]he law was clearly established in 2010 that it is a Fourth Amendment violation to

10

use physical force against a free citizen who is compliant and not resisting arrest." (Pl.'s Supplemental Br., Dkt. [51] at 4, 11.)  In Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998), for example, a woman asked officers to assist her in exchanging possessions with her former roommate. When the plaintiff refused to make the exchange, the officers entered his private residence and arrested him for obstruction of justice.  Because "the plaintiff had committed no crime" and the officers had no warrant to enter the residence, the court held that the officers were "merely attempting forcibly to resolve a civil dispute" and thus acted outside of their duty to maintain the peace when they arrested the plaintiff.  Thornton, 132 F.3d at 1399.

     Next, in Hadley v. Gutierrez, the plaintiff was arrested at a grocery store and placed in handcuffs behind his back.  526 F.3d at 1327.  As he was being led outside, an officer punched him in the stomach "even though he was not struggling or resisting."  Id. at 1330.  The court found that the officer used excessive force and further found "that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established" at the time of the assault.  Id. at 1333.

11

In another case, Fils v. City of Aventura, a plaintiff alleged that he was assaulted by police with tasers outside a nightclub after he commented that the police were overreacting in arresting another individual. See 647 F.3d at 1276-78. The plaintiff stated that after making his comments, a police officer drew his taser and pointed it at him. Id. at 1277. The plaintiff then raised his hands without making any menacing gestures towards the officers or disobeying their orders. Id. Even so, two officers fired their tasers, and the plaintiff fell to the ground. Id. The plaintiff did not resist the officers' attempts to handcuff him, yet one officer "put his knees on [the plaintiff's] back and applied a contact tase to the back of his neck, 'grinding' the taser and saying 'you motherfucker, you motherfucker.' " Id.

Plaintiff argues that these cases clearly establish it was unreasonable to use any force against her under the circumstances. While cases need not be materially similar, these cases are distinguishable in at least a couple of important respects. First, in Thorton the officers acted wholly outside their duties in making the arrest, see 132 F.3d at 1399 (forcibly resolving a civil dispute), while here Defendant was lawfully screening entrants to the Fulton County Courthouse. Second, while Plaintiff asserts Defendant was like the

12

officers who assaulted cooperative individuals offering no physical resistance, see Fils, 647 F.3d at 1277 (tasing non-resistant arrestee); Hadley, 526 F.3d at 1330 (punching non-resistant arrestee in the stomach), from Defendant's perspective Plaintiff was not cooperative. Those cases also took place in the context of arrests, not screening at a courthouse security line. Here, on the other hand, even though Plaintiff was not physically resisting arrest, she was not cooperative, which was a cause for concern given that she had just set off the metal detector. Comparing the facts in this case to previous Eleventh Circuit cases, preexisting case law did not give Defendant "fair warning" that forcibly terminating a phone call after giving Plaintiff a warning was unconstitutional in these circumstances.

While these cases do not clearly establish a constitutional violation, Plaintiff also argues that Defendant's actions violated her Fourth Amendment rights with "obvious clarity" such that Defendant is not entitled to qualified immunity. According to Plaintiff, since she was compliant and not resisting arrest, "no reasonable officer would have believed that it was reasonable to use physical force against [her]." (Pl.'s Supplemental Br., Dkt. [51] at 5.)

13

It was not obvious, however, that Defendant was unjustified in using any force in the situation he faced. Taking Plaintiff's facts as true, Plaintiff told Defendant that removing her coat would reveal undergarments. Yet she also acknowledges that the top ribbing of her white long-sleeved, round-necked thermal shirt was visible. (Pl.'s Resp. to Def.'s SMF, Dkt. [33] ¶ 17.) The double-breasted jacket also appeared to be a winter overcoat rather than a suit jacket. (See Photos, Dkt. [28-5, 28-6].) Still, Plaintiff points out that Defendant could have screened her with a wand instead of demanding that she take off her jacket. Defendant certainly could have handled the situation differently, and it is easy to conclude that he overreacted. As the Supreme Court has explained, however, Defendant's actions are to be evaluated "from the perspective of 'a reasonable officer on the scene,' and not through 'the 20/20 vision of hindsight.' " Harper v. Davis, 571 F. App'x 906, 910 (11th Cir. 2014) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Defendant was responsible for screening entrants to the courthouse when Plaintiff refused to remove her jacket after setting off the alarm. Plaintiff then proceeded to talk on the phone in the screening area after Defendant told her to terminate the call. So, while Plaintiff was not physically resisting or assaulting

14

Defendant in the course of an arrest, from Defendant's perspective she was uncooperative and might have posed a risk to others in the courthouse or those waiting in the security line.  Thus, when Defendant wrenched the phone out of Plaintiff's hand and ended her call, he states it was "to maintain control of the situation."  (Pl.'s Statement of Additional Material Facts, Dkt. [34] ¶ 14.)  Given these circumstances, it was not obviously clear at the time that Defendant's conduct was so outrageous that it went "so far beyond" the Fourth Amendment's "hazy border between excessive and acceptable force" so as to deprive Defendant of qualified immunity. See Fils, 647 F.3d at 1291(quoting Lee v. Ferraro, 284 F.3d 1188, 1198-99 (11th Cir. 2002)).  In sum, assuming without deciding that Defendant's use of force was excessive, the law did not clearly prohibit his conduct at the time of the incident.  Consequently, Defendant is entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [28] is **GRANTED**.

15

AO 72A
(Rev.8/82)

**SO ORDERED**, this __9th__ day of December, 2014.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

16